**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**


| | |
|---|---|
| **FRANCES MOSBY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | )    **No. 3:04-0275** |
| | ) |
| **v.** | ) |
| | ) |
| **STATE FARM MUTUAL AUTOMOBILE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |


<u>**MEMORANDUM**</u>

Plaintiff Frances Mosby ("Ms. Mosby") filed a complaint under Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000(e), et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-311,

alleging racial discrimination, harassment, and retaliation against State Farm Mutual Automobile Insurance

Company ("State Farm"). State Farm filed a Motion for Summary Judgment (Doc. No. 13) and Memorandum

of Law in Support (Doc. No. 16), filed under seal pursuant to Agreed Protective Order entered on February

25, 2005[1] (Doc. No. 12), seeking judgment as a matter of law on each of Ms. Mosby's claims arising under

Title VII and the THRA. Plaintiff filed her Response in Opposition to Defendant's Motion (Doc. No. 24)

and Responses to Defendant's Statement of Undisputed Facts (Doc. No. 25). Defendant filed its Reply

(Doc. No. 30) and a Response to Plaintiff's Statement of Additional Facts (Doc. No. 31). For the reasons

set forth below, Defendant State Farm's Motion for Summary Judgment is GRANTED on all claims.

### I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1]The Protective Order provides that the Parties shall have the right to designate information and documents as "Confidential," including deposition transcripts and exhibits (Protective Order ¶¶ 1-4), and "if any party deems it necessary to file documents designated as 'Confidential' pursuant to the terms of this Order with the Court" the documents shall be filed "under seal" and "shall remain under seal to be opened only by the Court." (Protective Order ¶ 5.) In deciding State Farm's Motion for Summary Judgment, the Court now considers the information contained in documents filed by State Farm in support of its Motion for Summary Judgment and documents filed by Ms. Mosby in opposition to State Farm's Motion for Summary Judgment, all of which were stamped "Confidential" and filed "Under Seal" by the respective parties. The information and evidence discussed herein are necessary to the determination of State Farm's Motion for Summary Judgment.

## A. Factual Background

Frances Mosby is a citizen and resident of Rutherford County, Tennessee. Ms. Mosby is African-American. State Farm is a corporation organized and existing under the laws of Illinois with its principal place of business in Illinois. State Farm is authorized to do business in Tennessee.

Since 1968, Ms. Mosby has held various jobs with State Farm. In mid-1999 State Farm created the Technical Specialist Position in the State Farm Payment Plan (SFPP) and in September 1999 Ms. Mosby was promoted to her current position as a Technical Specialist in the SFPP. At the time of Ms. Mosby's promotion to Technical Specialist, two of Ms. Mosby's longtime co-workers, Barbara Fields and Pamela Alsup, were also promoted to SFPP Technical Specialist positions. Like Ms. Mosby, both Ms. Fields and Ms. Alsup were also SFPP Senior Account Representatives prior to the promotion. At the same time, a fourth employee, Carolyn Gannon, was also promoted to SFPP Technical Specialist. Unlike the other three Technical Specialists promoted, Ms. Gannon had not been an SFPP Account Representative, but rather had held the title of SFPP Coordinator. All three of Ms. Mosby's fellow Technical Specialists, Ms. Alsup, Ms. Fields, and Ms. Gannon are Caucasian. Ms. Mosby, Ms. Fields, Ms. Alsup and Ms. Gannon were the only Technical Specialists in the SFPP department from 1999 through 2003.

From 1996 to January 2004, Ms. Mosby reported to her immediate supervisor Lori Glaze. Since 1999 and throughout the time period at issue in this case, Tracy Barker has been Ms. Glaze's supervisor and Ms. Mosby's superintendent. Both Ms. Glaze and Ms. Barker are Caucasian. (Compl. ¶ 7.)

### 1. Comments in 1999

Ms. Mosby alleges that prior to her own promotion to SFPP Technical Specialist in September of 1999 she heard from a trainee that Ms. Fields was going to be promoted to the new position of SFPP Technical Specialist. When Ms. Mosby went to her superintendent Ms. Barker and asked her about the possible promotion of Ms. Fields, according to Ms. Mosby, Ms. Barker responded by asking her, "What are you going to do, go to the EEOC?" (Comp. ¶ 11). Following this exchange in 1999, Ms. Mosby wrote a letter to Human Resources ("H.R.") voicing concerns of racial discrimination. (Id.)

Ms. Mosby's 1999 complaint to H.R. was handled by the Assistant H.R. Manager Cheryl Collins. Ms. Collins investigated the situation and informed Ms. Mosby that she was unable to substantiate her claims of

discrimination. Shortly thereafter Ms. Mosby, Ms. Fields, Ms. Alsup, and Ms. Gannon all received promotions to SFPP Technical Specialist. (Compl. ¶ 8). Each received the same pay from 1999 through 2001, when a new evaluation scale was implemented by State Farm.

### 2. Training of Ms. Moore

As a Technical Specialist, Ms. Mosby's job responsibilities include training new account representatives and presenting projects related to the position. Ms. Mosby contends she was subject to discrimination during the eighteen to twenty-four months she spent training a new African-American employee, Cynthia Moore, between June 2001 and August 2003. In June 2001, Ms. Moore was hired into the training program to become an account representative, a position for which Ms. Mosby and the other Technical Specialists provided training.

In October 2001, Ms. Mosby found Ms. Moore crying. Ms. Moore told Ms. Mosby that Ms. Gannon and Ms. Fields, both Technical Specialists who performed the initial class training, refused to train her. (Compl. ¶ 13.) Ms. Mosby reported this encounter to SFPP Account Representative Supervisor, Jill McHaffey, who asked Ms. Mosby and Ms. Moore to meet with her and the superintendent/manager over SFPP, Ms. Barker, to discuss supplemental training for Ms. Moore. Ms. Mosby offered to help train Ms. Moore, but Ms. Barker refused and replied that the trainees would not receive special treatment. (Id.)

The following day Ms. Mosby's supervisor, Ms. Glaze, met with Ms. Mosby to discuss her offer to help train Ms. Moore and her meeting with Ms. McHaffey and Ms. Barker. Shortly thereafter, in November 2001, Ms. Mosby had her performance evaluation with Ms. Glaze. Ms. Mosby alleges that during her evaluation the issue of Ms. Mosby's offer to help train Ms. Moore came up again and Ms. Glaze told her that her offer to help Ms. Moore would be taken into consideration when her final review was completed. (Aff. of France Mosby Ex. A at 1 (filed under seal).) Ms. Mosby also concedes that Ms. Glaze never said she would be penalized for offering to help Ms. Moore. (Mosby Dep. at 289-94.)

A few months later, in January 2002, Ms. Mosby was allowed to train Ms. Moore. Ms. Mosby contends that at this time Ms. Glaze told her, "Your face is as black as [Ms. Moore's]. She can't say you're prejudiced." (Compl. ¶ 14; Mosby Aff. Ex. A at 2.) Subsequently, on January 25, 2002, Ms. Mosby wrote a second letter to H.R. reporting Ms. Glaze's comment along with several other events in connection with Ms

Mosby's training and supervision of Ms. Moore that she believed constituted harassment. (Mosby Aff. Ex. A). In her letter Ms. Mosby stated that she was "a little surprised at Lori Glaze," but later stated that she knew Ms. Glaze's remark was based on prior allegations by Ms. Moore that her previous trainers, Ms. Gannon and Ms. Fields, were prejudiced against her. (Dep. of Frances Mosby at 138-39, Dec. 15, 2004 (filed under seal).) Ms. Mosby admits that the concerns brought up in her 1999 and 2002 letters to H.R. were investigated by H.R. (Mosby Dep. at 147.)

Ms. Mosby continued to train Ms. Moore until Ms. Moore left the company in August of 2003. Ms. Mosby alleges that throughout the training process Ms. Moore was treated differently than the other trainees and that Ms. Mosby was subjected to harassment in connection with her training of Ms. Moore. Ms. Mosby contends that Ms. Moore was constantly the subject of staff meetings and was subject to remarks about her ability to learn. (Compl. ¶ 14.) Further, Ms Mosby claims that she was often questioned about her training of Ms. Moore and was required to report to Ms. Glaze daily regarding Ms. Moore's work, but that such reports were not required of any other Technical Specialists for any other trainees. (Id.)

### 3. Racial discrimination and retaliation in evaluation

State Farm evaluates its employees annually. From 1999 through 2003, Ms. Glaze conducted the evaluations of each of the Technical Specialists. Beginning in 2001 State Farm began evaluating employees using a process known as "Performance and Rewards." Ms. Glaze began using this process to evaluate Technical Specialists in 2001. (Mosby Dep. at 218.)

Prior to 2001, State Farm had used a different system to evaluate employees. Under the new Performance and Rewards system, employees are evaluated on specific "competencies" and "results" expected from them in their job position. The evaluations result in written feedback and a numerical rating from each employee's supervisor. The employee's competencies rating is either "inconsistent," "proficient" or "excels." The results ratings are, in ascending order, Level 1, 2 or 3. An employee who receives a "Level 2/Proficient" rating is one who "consistently meets expectations," while an employee who receives a "Level 3/Excels" rating is a "role model" who "consistently exceeds expectations" and shows "uncommon achievement."

Under this process supervisors have the discretion to recommend a merit-pay increase based on an

4

employee's competencies and results ratings. The percentage of raise varies depending on the "Pay Option" determined by the ratings as well as the approved pay range for the employee's position. (Mosby Dep. at 161-62.) A rating of "Level 2/Proficient" results in a Pay Option II level for a raise, while a rating of "Level 3/Excels" results in a Pay Option II or III level for a raise.

Prior to the implementation of the "Performance and Rewards" system, SFPP Technical Specialists Ms. Alsup, Ms. Fields, and Ms. Mosby received the same base pay. Since the implementation of the new system, each SFPP Technical Specialist has received a different raise based on each individual's performance as determined by Ms. Glaze. For the evaluations for 2001, which led to pay increases effective on February 2, 2002, Ms. Alsup received a "Level 3/Proficient" and a raise to a base pay of $41,115.17; Ms. Fields received a "Level 3/Excels" and a base pay of $41,915.07; and Ms. Mosby received a "Level 2/Proficient" and resulting base pay of $40,955.19.

On November 21, 2002, Ms. Mosby received her job evaluation from Ms. Glaze for the previous year's job performance. The evaluation consists of an "Actual Results" portion that provides narrative on the employee's performance as well as a "Competency Assessment" or "Results Assessment" to provide the competencies and results ratings. Ms. Mosby again received an overall rating of "Level 2/Proficient," which placed her at the Pay Option II level. Ms. Glaze recommended a 2.35% merit increase for the year, which resulted in a new base pay of $41,917.64 effective February 1, 2003.

Ms. Mosby believes that her performance warranted a "Level 3/Excels" rating rather than the "Level 2/Proficient" rating she received, but agrees with the narrative portion of the evaluation. (Pl.'s Resp. to Def.'s Statement of Undisputed Facts Supp. Def.'s Mot. Summ. J. ¶¶ 21, 22; Mosby Dep. at 226, 241.) Ms. Glaze noted in the narrative portion of Ms. Mosby's evaluation areas where Ms. Mosby excelled as well as areas where Ms. Mosby needed improvement. For example, the narrative noted, "There was an incident in the beginning of the year in which a test was not developed in a timely manner." (Evaluation by Ms. Glaze of Ms. Mosby of 11/21/02 at 9.) The narrative also mentioned that Ms. Mosby had a tendency to do too much work for others and needed to continue to work on this. (Id.) Despite her disagreement with the evaluation, Ms. Mosby agrees that her supervisor's assessment of her performance governs. (Pl.'s Resp. ¶ 23; Mosby Dep. at 194).

For the same evaluation cycle, Ms. Glaze evaluated the performances of the three other SFPP Technical Specialists as well. Ms. Alsup received an overall rating of "Level 2/Proficient" and was placed in Pay Option II. She received a merit increase of 2.82% and a new base pay of $42,274.62. Ms. Fields and Ms. Gannon were given overall ratings of "Level 3/Excels," assigned Pay Option III, and given merit increases of 4.7% and 1.333% respectively.

Ms. Mosby became aware that Ms. Fields received "Level 3" status in March 2003, when she claims Ms. Fields asked for help and showed her a form with her performance evaluation on it. Ms. Mosby approached Ms. Glaze about the disparity in pay raises and contends that Ms. Glaze responded that Ms. Mosby received a lower evaluation partly because of her attitude. Ms. Mosby wrote a letter to H.R. on March 26, 2003, notifying the department that she was continuing to experience racial discrimination. Ms. Mosby concedes that she does not know why she was evaluated and paid as she was, but she believes she may have received a lower evaluation based on her race or perhaps her comments made in October 2001 concerning her offer to train Ms. Moore and the memorandum she wrote to H.R. concerning harassment in January 2002. (Pl.'s Resp. ¶¶ 24-26.) Ms. Mosby also contends that no actions were taken to address her concerns although representatives of H.R. indicated they would investigate her claims.

### 4. Other allegations

Ms. Mosby claims that management has treated her differently from her Caucasian co-workers, specifically the other Technical Specialists, by not assigning her special projects, not providing feedback when requested and excluding her from meetings and decisions affecting the department. (Compl. ¶ 8.) Ms. Mosby also claims that she has been subject to negative comments and remarks made by management related to her performance, which the other Technical Specialists have not had to endure. (Compl. ¶ 8.)

## B. Procedural Background

On April 9, 2003, Ms. Mosby filed a charge of racial discrimination against State Farm with the Tennessee Human Rights Commission (THRC) and the Equal Employment Opportunity Commission (EEOC). Attempts by the parties to mediate the dispute were unsuccessful and on February 13, 2004, the EEOC dismissed Ms. Mosby's charge at her request and issued a notice of right to sue.

Ms. Mosby filed a complaint against State Farm on February 17, 2004 in the Chancery Court for

Rutherford County, Tennessee.  State Farm removed the case to the United States District Court for the Middle District of Tennessee in April 2004.

Ms. Mosby's Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-311, charging State Farm with race discrimination, retaliation and racial harassment.  First, Ms. Mosby claims that her November 2002 Performance and Rewards evaluation rating by her supervisor Ms. Glaze and her related merit raise, which she alleges was lower than warranted by her performance and less than that received by her white comparators, was based on her race and constitutes an actionable race discrimination claim under Title VII and the THRA.  Second, Ms. Mosby contends that her November 2002 evaluation and pay raise were in retaliation for her October 2001 offer to help train Ms. Moore, an African-American SFPP trainee, and the January 2002 letter she wrote to H.R. concerning allegations of racially discriminatory treatment of Ms. Moore and Ms. Mosby in connection with the training of Ms. Moore, resulting in a claim for retaliation under Title VII and the THRA.

Finally, Ms. Mosby claims that she was subjected to a racially hostile work environment in violation of Title VII and the THRA as the result of one remark made by superintendent Ms. Barker in July 1999 referencing the EEOC and another remark made by Ms. Glaze in January of 2002 referring to Ms. Mosby's race.

State Farm filed its Answer on June 3, 2004, and in April 2005, filed its Rule 56 Motion for Summary Judgment and a Memorandum of Law in Support of Summary Judgment seeking judgment as a matter of law on each of Ms. Mosby's claims arising under Title VII and THRA based on procedural and substantive grounds.  Defendant State Farm's Motion for Summary Judgment is now before this Court and the Court will consider each of State Farm's arguments in turn.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed .R. Civ. P. 56(c).  The moving party has the burden of showing an "absence of a genuine issue of material fact as to an essential element of the nonmovant's case."  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The moving party may do this by

providing affidavits or other proof or by showing lack of evidence on an issue for which the non-moving party will have the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). The non-moving party must then present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

## III. ANALYSIS

### A. State Farm's Procedural Arguments for Summary Judgment

State Farm makes several procedural arguments in support of its motion for summary judgment. First, State Farm argues that Ms. Mosby's Title VII harassment claim is time-barred because it was filed outside the 300-day window allowed for Title VII claims. Second, State Farm contends that all of Ms. Mosby's claims under the THRA are barred by the applicable one-year limitations period. Finally, State Farm also argues that Ms. Mosby's Title VII retaliation claims must be dismissed because she did not refer to retaliation in her EEOC charge, and therefore, failed to exhaust her administrative remedies before filing her retaliation claim in Chancery Court as required by Title VII. The Court considers each of Defendant State Farm's procedural arguments for summary judgment.

#### 1. Whether Ms. Mosby's Title VII Harassment Claim Is Time-Barred

In Tennessee, plaintiffs must file Title VII claims with the EEOC within 300 days of alleged discriminatory conduct.[2] 42 U.S.C. § 2000(e)-5(e)(1) (1991). For Title VII actions, "the starting date for the 300-day limitations period is when the plaintiff learns of the employment decision itself, not when the plaintiff learns that the employment decision may have been discriminatorily motivated." <u>Amini v. Oberlin College</u>, 259 F.3d 493, 499 (6th Cir. 2001). Based on this rule, the date a race discrimination or retaliation claim accrues is often easy to identify; however, the date a hostile work environment claim accrues is more difficult to ascertain. The Supreme Court has noted that the critical questions to determine whether an action is time-barred are: (1) what constitutes an "unlawful employment practice," and (2) when such practice "occurred." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 110 (2002). Generally, a practice "occurs" "on the day that it 'happened.'" <u>Id.</u> Hostile environment claims, however, involve repeated conduct and are therefore different from discrete acts. "The 'unlawful employment practice' therefore cannot be said to have occurred

---

[2]The statute of limitations for Title VII claims in Tennessee is 300 days because Tennessee is a deferral state, meaning it has its own statutory framework concerning discrimination. In non-deferral states, the statute of limitations is 180 days.

8

on any particular day.  Such practice rather occurs over a series of days or perhaps years, and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." Id. at 115.  Therefore, it does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period.  Id. at 117.  Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered.  Id.

Ms. Mosby's hostile work environment claim is based on how she was treated during the time she trained Ms. Moore, including being scrutinized for her work, having to give daily progress reports, and enduring negative comments from the other employees.  Ms. Mosby trained Ms. Moore from January 2002 through August 2003.  The Court finds that Ms. Mosby's filing of the EEOC charge of harassment in April 2003 was within the 300-day window allowed for Title VII claims and therefore, her Title VII harassment claim is timely.  Accordingly, State Farm's motion for summary judgment as to Ms. Mosby's Title VII claims of harassment based on Title VII's 300-day statute of limitations is DENIED.

**2. Whether Ms. Mosby's THRA Claims Are Completely Time-Barred**

**a. Ms. Mosby's THRA claims for discrimination and retaliation**

Under the THRA, an action must be "filed in chancery or circuit court within one (1) year after the alleged discriminatory practice ceases." Tenn. Code. Ann. § 4-21-311.  Ms. Mosby filed her complaint in the Rutherford County Chancery Court on February 17, 2004.  Thus, any claims brought under the THRA must be based on actions that occurred after February 17, 2003.

To begin an inquiry on whether claims under the THRA are time-barred, the court must first identify the alleged discriminatory action.  In Weber v. Moses, 938 S.W.2d 387 (Tenn. 1996), the Tennessee Supreme Court determined that the discriminatory practice in that case was the termination of an employment contract.  The court then determined that the statute of limitations began to run when the plaintiff learned of his discharge orally, not at a later date when he officially received his termination in writing.  Id. at 392-93. The Weber court also considered federal law in construing the statute of limitations.  The federal cases cited in Weber stand for the proposition that a plaintiff receives unequivocal notice of an employer's termination decision when she is informed of that decision, even if employment does not cease until a designated date in the future.  Id. at 391-92 (analyzing Delaware State College v. Ricks, 449 U.S. 250 (1980)).  In addition,

9

federal courts have held that the limitations period runs from the time of the adverse employment action and not from the time the plaintiff learns that the action may have been unlawful. Amini, 259 F.3d at 499.

Ms. Mosby claims that she received an evaluation and pay raise that were below what she deserved because of race discrimination and retaliation as the result of her opposition to the racially discriminatory treatment experienced by Ms. Moore. Ms. Mosby received the evaluation on November 21, 2002. While Ms. Mosby argues that she did not know of the discrimination until March 23, 2003, when she learned of Ms. Fields' higher pay increase for the same year, the alleged discriminatory action was the completion of Ms. Mosby's evaluation on November 21, 2002. As the Tennessee Supreme Court held in Weber, the statute of limitations begins to run when a plaintiff learns of the adverse employment action and not when she discovers that the action may have been discriminatory.[3] The Court finds that Ms. Mosby's THRA claims of discrimination and retaliation are time-barred because she did not file a claim until February 2004, more than a year from the time of the alleged discriminatory act, and thus, State Farm's motion for summary judgment as to Ms. Mosby's THRA claims of discrimination and retaliation based on the THRA's statute of limitations is therefore GRANTED.

### b. Ms. Mosby's THRA claims for hostile work environment

As with Ms. Mosby's THRA claims for discrimination and retaliation, her THRA claims for hostile work environment based on harassment are subject to THRA's one-year statute of limitations. Specifically, Ms. Mosby's THRA claims for harassment will be time-barred unless they were "filed in chancery or circuit court within one (1) year after the alleged discriminatory practice cease[d]." Tenn. Code Ann. § 4-21-311. Yet, unlike her THRA claims for discrimination and retaliation, Ms. Mosby's THRA claims for hostile work environment did not accrue until the last harassing act occurred. The Court finds that the same analysis applied to Ms. Mosby's Title VII claims for harassment above, apply to her THRA claims for harassment and, therefore, Ms. Ms. Mosby's claims for harassment under THRA are not time-barred. Specifically, Ms. Mosby's harassment claims are based on acts and occurrences that took place during the time she spent

---

[3]The Court distinguishes here between the allegations of a discriminatory action for purposes of claim accrual in the context of the statute of limitations under THRA and allegations sufficient to establish that such actions constitute an actionable "adverse employment action" under THRA or Title VII. As discussed in Section III.B., infra, Ms. Mosby's claims that her November 2002 evaluation and the resulting pay raise constitute an adverse employment action under Title VII are without merit.

training Ms. Moore from January 2002 until August 2003. Ms. Mosby's filing of claims in February 2004 in Chancery Court fall within one year of the last alleged time of the ongoing harassment and her THRA claims for harassment are timely. Accordingly, State Farm's motion fo summary judgment as to Ms. Mosby's THRA claim for harassment based on the THRA's one-year statute of limitations is DENIED.

### 3. Whether Ms. Mosby Exhausted Her Administrative Remedies For Retaliation

Generally, a plaintiff must file charges with the EEOC prior to bringing a Title VII lawsuit. 42 U.S.C. § 2000e-5 (e)(1) (1991). Additionally, prior to bringing a Title VII suit, an employee must obtain a right to sue letter from the EEOC and file the suit within ninety days of receiving the letter. 42 U.S.C. § 2000e-5 (f) (1991); Sangster v. Henry Ford Health Sys., No. 04-CV-74619, 2005 WL 1349107, at *2 (E.D. Mich. May 25, 2005). In the Sixth Circuit, a plaintiff bringing claims under Title VII is limited to those claims the plaintiff first filed with the EEOC or investigative agency and claims that stem from the claims filed with the EEOC or investigative agency. Id. at *2 (quoting Weigel v. Baptist Hosp. of East Tenn., 302 F.3d 367, 380 (6th Cir. 2002)). The district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court. Gupta v. East Tex. State Univ., 654 F.2d 411, 414 (5th Cir.1981). Therefore, it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge. Id. If the plaintiff claims that retaliation occurred prior to filing the EEOC claim, and not as a result of the claim, however, the retaliation claim may still be barred. Ang v. Proctor & Gamble Co., 932 F.2d 540, 547 (6th Cir. 1991).

Further, courts look at the nature of the retaliation charge and whether or not a plaintiff was represented by counsel when filing EEOC charges to determine if claims are barred. Where the plaintiff is not represented by counsel when making her EEOC claims, the courts "are required to give a broad reading to the charge." Cameron v. Bd. of Educ. of Hillsboro, 795 F.Supp. 228, 234 (S.D. Ohio 1991).

In Ang, the court dismissed a charge of retaliation because the plaintiff did not raise retaliation charges in his EEOC complaint. The Ang plaintiff had been represented by counsel when filing the EEOC charges, and the alleged retaliation occurred prior to the EEOC filing. Ang, 932 F.2d at 546-47. In contrast, in Weigel, the court allowed plaintiff to bring charges of retaliation despite failing to note retaliation on the EEOC complaint. The Wiegel court found that facts related to the EEOC charge would naturally lead the

EEOC to investigate the retaliation charge and that the claim was not barred.  Weigel, 302 F.3d at 380-81.

In Duggins v. Steak 'N' Shake, 195 F.3d 828 (6th Cir. 1999), despite the plaintiff's failure to include such a charge in the EEOC complaint, the court also allowed a charge of retaliation.  In so doing, the Court noted two distinctions between Duggins and Ang.  First, contrary to the situation in Ang, the plaintiff in Duggins was not represented by counsel when he filed the EEOC complaint.  Second, unlike the plaintiff in Ang, Duggins alleged facts that would lead the EEOC to investigate retaliation, including being passed over for promotion and receiving unwarranted criticism.  Id. at 833.

In the present case, Ms. Mosby's EEOC complaint alleges race discrimination and harassment.  Ms. Mosby noted that she was denied wages comparable to white employees in the same job classification and was subjected to harassment and unfair terms and conditions of employment.  Similar to the plaintiffs in Ang and Duggins, Ms. Mosby did not refer to retaliation in her factual statement on the EEOC form, nor did she check the box marked "retaliation."  However, like the plaintiff in Duggins, Ms. Mosby was not represented by legal counsel when she made the claim.  Moreover, Ms. Mosby's complaint in the state chancery court alleges that she suffered retaliation as the result of her opposition to the racially discriminatory treatment experienced by Cynthia Moore.  Additionally, she alleges that State Farm retaliated against her based on a letter Ms. Mosby wrote to H.R. in January 2002 in connection with the treatment she and Ms. Moore experienced.  (Compl. ¶ 20.)

Because Ms. Mosby was not represented by counsel when she filed her EEOC claim, the Court must give a broad reading to the charges in the EEOC complaint.  Cameron, 795 F.Supp. at 234.  In the present case, the alleged retaliation and the incidents leading to the retaliation occurred prior to her EEOC filing.  However, similar to the facts in Duggins, it is reasonable to expect that Ms. Mosby's claims of discrimination would have led the EEOC to investigate for retaliation.  Therefore, State Farm's Motion for Summary Judgment as to Ms. Mosby's Title VII claims of retaliation based on failure to exhaust administrative remedies is DENIED.

**B.  Ms. Mosby's Prima Facie Case for Discrimination, Hostile Work Environment, and Retaliation**

Although the Court has found that Ms. Mosby's THRA claims of racial discrimination and retaliation are barred by the one-year statute of limitations, Ms. Mosby may still raise racial discrimination and

12

retaliation claims under Title VII. Defendant State Farm argues that because Ms. Mosby has not provided any direct evidence that her race or any alleged protected activity played a role in her 2002 evaluation or pay increase, she has failed to establish a prima facie case of intentional race discrimination and retaliation under Title VII, and State Farm is entitled to judgment as a matter of law as to both Title VII claims.

State Farm also argues that even if Ms. Mosby's Title VII and THRA harassment claims could withstand its procedural arguments for summary judgment, she has failed to establish an actionable harassment claim based on hostile work under either Title VII or The THRA. Because the Court rejects State Farm's argument that Ms. Mosby's claims for harassment are time-barred under Title VII or The THRA, the Court considers below State Farm's substantive arguments for summary judgment as to the harassment claims under Title VII and The THRA.

To bring a Title VII claim successfully, a plaintiff must point to direct evidence of discrimination or must establish a prima facie case of discrimination based on circumstantial evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to proffer a non-discriminatory reason for its actions. Id. Then, the plaintiff may prove by a preponderance of the evidence that the employer's proffered reason is a pretext for discrimination. Newman v. Fed. Express Corporation, 266 F.3d 401, 405 (6th Cir. 2001). The burden of persuasion remains with the plaintiff at all times. Texas Dep't of Com. Affairs v. Burdine, 450 U.S. 248 (1981). As discussed below, Ms. Mosby has failed to satisfy her burden for any of her claims and therefore cannot establish a prima facie case of discrimination or retaliation under Title VII or hostile work environment based on harassment under Title VII or The THRA.

### 1. Racial Discrimination under Title VII[4]

#### a. Ms. Mosby's prima facie case

Title VII prohibits employers from discriminating against an employee on the basis of race.[5] To

---

[4]Although Ms. Mosby's THRA claims of racial discrimination are time-barred, she may still raise a racial discrimination charge under Title VII.

[5]Title VII makes it unlawful for an employer to "discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e (2005).

13

establish a prima facie case through circumstantial evidence, the plaintiff must show that (1) she is a member of a protected class; (2) she has suffered an adverse employment action; (3) she was performing her job satisfactorily; and (4) similarly-situated employees who are not members of the protected class were treated more favorably. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996). Once the plaintiff makes her prima facie case, the defendant then has the burden of setting forth a non-discriminatory reason for the adverse employment action. Id. If the defendant provides a reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's proffered reason is pretextual. Id.

Ms. Mosby provides the following evidence of discrimination to establish her prima facie case:

1.  Ms. Mosby has more seniority by six years or more than any other SFPP Technical Specialists.
2.  Ms. Mosby assisted in the training of all of the other three SFPP Technical Specialists.
3.  Ms. Mosby was considered an exemplary employee in June 1999, when she received a "Special Achievement Award."
4.  In 1999, 2000, and 2001, Ms. Mosby received the same base pay and evaluation rating as her comparators, Ms. Fields and Ms. Alsup.
5.  In 2002, Ms. Mosby received less base pay and less performance cash and was rated below her comparators.
6.  In 2003, Ms. Mosby received less base pay and less performance cash than her comparators, despite receiving the same Competency and Results rating as Ms. Alsup.
7.  Ms. Mosby has performed the same in all years under scrutiny.

(Pl.'s Resp. 2-4.)

Although Ms. Mosby has set forth sufficient evidence to establish three of the four elements of a prima facie case, she has failed to establish the second element necessary to prove a prima facie case of discrimination–that she suffered an adverse employment action–and consequently, has failed to prove the elements necessary to shift the burden of proof to Defendants.

With respect to the first and third elements, it is undisputed that Ms. Mosby is African-American and a member of a protected class and that she performed her job satisfactorily. State Farm has never claimed otherwise and it is clear from the evidence presented in this case including deposition testimony, details of Ms. Mosby's work history at State Farm, and even her 2002 evaluation wherein she received a "Level 2/Proficient" evaluation, that Ms. Mosby's job performance was satisfactory.

As for the fourth element, Ms. Mosby has also proved that similarly-situated employees that are not members of the protected class were treated more favorably than she. To be deemed "similarly-situated,"

the individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Ms. Mosby, Ms. Alsup, and Ms. Fields were promoted to "SF 7" in 1999, each received the same salary through February 2, 2002, and each has the same job title and similar job duties. (Def.'s Answer ¶ 9). Additionally, Ms. Glaze was the supervisor for all. Therefore, the Court finds that Ms. Alsup, Ms. Fields and Ms. Mosby are similarly situated. The Court also finds that Ms. Alsup and Ms. Fields were treated more favorably than Ms. Mosby because they were paid more wages for substantially equal work. See Anderson v. Mead Johnson Nutritional Group, Bristol-Myers Squibb Co., 910 F.Supp. 376, 384 (E.D. Tenn. 1996) ("To establish a claim of unequal pay for equal work, the plaintiff must also prove that different wages were paid to employees of different groups for substantially equal work.").

Although she has established three of the four prongs of a prima facie Title VII discrimination claim, Ms. Mosby has failed to establish that she suffered an adverse employment action and therefore cannot establish the second element necessary for a prima facie case. Adverse employment actions include hiring, firing, failing to promote, reassigning with different responsibilities, and decisions causing a significant change in benefits. White v. Burlington Northern & Santa Fe R.R. Co., 364 F.3d 789, 798 (6th Cir. 2004); Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000). It is settled law in the Sixth Circuit that receiving a lower merit raise based on a performance evaluation does not by itself constitute an adverse employment action. See Hollins v. Atlantic Co., Inc., 188 F.3d 652 (6th Cir. 1999). In Hollins, the court established that it is not an adverse employment action for an employee to receive a performance evaluation that is followed by a merit increase that is less than what the employee would have given himself. Id. at 662.

In the present case, Ms. Mosby claims that her lower pay increase was an adverse employment action. She notes she is paid less than a member of a different race for work which requires substantially the same responsibilities. (Pl.'s Resp. 5.) Ms. Mosby was originally paid the same amount as the other SFPP Technical Specialists. It was not until State Farm implemented the "Performance & Rewards" framework that Ms. Mosby received an increase in pay that was less than that of other SFPP Technical

Specialists. Ms. Mosby admits the increase in pay is within the discretion of her manager, Ms. Glaze, and that it is the management's prerogative to make determinations of raise and merit increase each employee should receive. (Mosby Dep. at 187.) She also admits that a "Level 2/Proficient" evaluation is in "the middle of the road." (Id. at 301.) Additionally, she did not complain about her raise and evaluation until she learned that another employee received a more favorable evaluation, which indicates that the evaluation itself was satisfactory.

Moreover, it is undisputed that even if Ms. Mosby had received the higher performance evaluation in 2002 of "Level 3/Excels," she would not necessarily have been entitled to a larger pay raise. In fact, under the Performance and Rewards system the Pay Option associated with "Level 3/Excels" may be either the same Pay Option II Ms. Mosby received as a Level 2/Proficient or the higher Pay Option III received by Ms. Fields. Thus, based on the evidence presented and the law of the Sixth Circuit, the Court finds that Ms. Mosby has not suffered an adverse employment action by receiving an acceptable evaluation and pay raise.

Having determined that Ms. Mosby has failed to establish the second prong of her prima facie case for discrimination under Title VII, the Court concludes that Ms. Mosby cannot establish the elements necessary to prove a claim of racial discrimination under Title VII. Accordingly, the Court holds that State Farm is entitled to judgment as a matter of law as to Ms. Mosby's claims of racial discrimination and hereby GRANTS Defendant State Farm's motion for summary judgment as to Ms. Mosby's claim of racial discrimination under Title VII.

Although unnecessary for purposes of deciding State Farm's Motion for Summary Judgment as to Ms. Mosby's Title VII claim for racial discrimination, the Court now considers the parties' arguments as to whether, assuming Ms. Mosby had established her prima facie case of discrimination under Title VII, Ms. Mosby could otherwise avoid summary judgment on her Title VII discrimination claim.

**b. State Farm's non-discriminatory reason**

Even assuming Ms. Mosby established her prima facie case under Title VII, State Farm has the opportunity to present evidence of a non-discriminatory reason for its adverse action before Ms. Mosby can prevail. State Farm has presented evidence in the form of deposition testimony by Ms. Mosby's supervisor Ms. Glaze that clearly provides a non-discriminatory reason for Ms. Mosby's 2002 evaluation and pay raise.

Specifically, in her deposition, Ms. Glaze explained that Ms. Mosby received lower pay increases and lower evaluations in certain years based on Ms. Glaze's consideration of "the job responsibilities of a technical specialist," which involved more "visionary" duties instead of the "production" duties of an account representative, and Ms. Glaze's assessment that "[the other employees] demonstrated a higher level of understanding of what the job responsibilities were."  (Deposition of Lori Glaze at 26, Feb. 9, 2005.) Additionally, Ms. Glaze noted that the increases were totally discretionary and that statements on Ms. Mosby's performance review indicated the areas where she needed improvement.  (Id.)  Moreover, Ms. Mosby has testified that she agrees with all of the narrative portions of her November 2002 evaluation. (Mosby Dep. at 241.)  Accordingly, the Court finds that even if Ms. Mosby had established a prima facie case under Title VII for racial discrimination, State Farm has set forth sufficient evidence to establish a non-discriminatory reason for Ms. Mosby's 2002 evaluation and pay raise and Ms. Mosby's claims could only prevail if she had presented evidence to rebut State Farm's reasoning.

### c. Proving pretext

Once the defendant presents a non-discriminatory reason for its actions, the burden shifts to the plaintiff to rebut the proffered reason. Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1083-84 (6th Cir. 1994).  The plaintiff may do so by showing, by a preponderance of the evidence, either that (1) the proffered reasons had no basis in fact, (2) the proffered reasons did not actually motivate the employer, or (3) they were insufficient to motivate the employer.  Id. at 1084. If Ms. Mosby could produce evidence rebutting State Farm's non-discriminatory reason for Ms. Mosby's 2002 performance evaluation and pay raise, then the Court would be permitted to infer discrimination and summary judgment in favor of the defendant would be inappropriate. Kline v. Tenn. Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997); EEOC v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 835 (6th Cir. 1997).

In trying to rebut State Farm's reasoning and establish pretext, Ms. Mosby points to her belief that her pay raise should have been higher.  In the Sixth Circuit, a plaintiff may not simply substitute her own business judgment for that of the defendant.  Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 550 (6th Cir. 2004); see also Harper v. Georgia-Pacific Corp., 67 F. Supp. 2d 909, 914-15 (W.D. Tenn. 1998) ("[Plaintiff's] conclusory assertions and [plaintiff's] assumption that discrimination was a motivating factor in

his dismissal are simply not sufficient to withstand a motion for summary judgment.").

Ms. Mosby also alleges that Ms. Glaze's reasoning was clearly pretextual based on the fact that even in years where Ms. Mosby received the same evaluation as Ms. Alsup, Ms. Alsup still received a higher raise in base pay. However, the fact that Ms. Alsup received more pay in later years despite receiving the same evaluation as Ms. Mosby does not prove that State Farm's proffered reason for the pay discrepancy is pretextual. State Farm established that within a "Performance & Results" rating, the amount of a pay increase is still within the discretion of the supervisor and Ms. Glaze explained why she decided on the pay increases as she did. Simply pointing out the pay discrepancy does not establish that the motivation behind State Farm's actions was anything other than State Farm's proffered reason.

In fact, Ms. Mosby's own testimony belies her allegations of pretext. Specifically, although Ms. Mosby alleges that her Ms. Glaze gave her a lower evaluation because of her race, Ms. Mosby testified that her evaluation and pay may have been because she was "just not liked for some reason," (Mosby Dep. at 194-95), and that Ms. Glaze may just be a more difficult grader. (Mosby Dep. at 227, 241-42.) The Court finds that Ms. Mosby has failed to rebut State Farm's non-discriminatory reasoning and justification for Ms. Mosby's 2002 evaluation and pay raise. Ms. Mosby has failed to provide any evidence, other than her opinion, that Ms. Glaze's decision to give Ms. Mosby a lower evaluation and pay raise in November 2002 was motived by Ms. Mosby's race or by Ms. Mosby's letter to H.R. in January 2005.

To be clear, as indicated above, the Court finds that Ms. Mosby has failed to establish the elements necessary to show a prima facie case of racial discrimination under Title VII and for that reason holds that State Farm is entitled to judgment as a matter of law. However, even if the Court assumed Ms. Mosby had set forth sufficient evidence to show the elements for a prima facie case of discrimination under Title VII, the Court finds that Ms. Mosby has failed to set forth sufficient evidence to rebut State Farm's legitimate and non-discriminatory reason for her 2002 evaluation and pay raise. Accordingly, Ms. Mosby cannot satisfy her burden of persuasion as to her Title VII discrimination claim and State Farm is entitled to judgment as a matter of law as to Mosby's racial discrimination claims under Title VII on that basis as well.

### 2. Hostile work environment claims under Title VII and the THRA

To prevail on a claim of hostile work environment based on racial harassment under Title VII or the

18

THRA the plaintiff must establish a prima facie case by showing that: (1) she is a member of a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment was based on race; (4) the harassment had the effect of unreasonably interfering with her work performance by creating intimidating, hostile, or offensive work environment; and (5) the employer is liable. Newman v. Fed. Express, 266 F.3d 401, 405 (6th Cir. 2001); Frizzell v. Southwest Motor Freight, 154 F.3d 641, 647 (6th Cir. 1998) (noting that Tennessee Supreme Court has held that court may use federal case law assessing Title VII claims to analyze THRA claims) (citations omitted). When a plaintiff's claims are based on acts allegedly committed by a supervisor, she does not have to meet the fifth prong. Clay v. United Parcel Service, Inc., No. 05:04-CV-1262, 2005 WL 1540224 *25 (N.D. Ohio June 30, 2005.)

A hostile work environment is created by conduct that is severe or pervasive enough to create an objectively hostile or abuse environment, in other words, "an environment that a reasonable person would find hostile or abusive." Harris v. Forklift Sys., 510 U.S. 17, 21 (1993). Additionally, the victim must subjectively believe the environment is abusive. Id. at 22. A hostile environment is determined by looking at all of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.

Ms. Mosby outlined her harassment and hostile work environment claim in her January 25, 2002 letter to H.R. in which she discussed her efforts to help train another African-American employee, Cynthia Moore. (Mosby Aff. Ex. A.) Ms. Mosby alleges that she began to experience harassment while she was training Ms. Moore. Ms. Mosby identified statements made to her, including Ms. Glaze's alleged statement that Ms. Mosby would train Ms. Moore because Ms. Mosby was also black and therefore Ms. Moore could not claim Ms. Mosby was prejudiced. This comment came after Ms. Moore filed a discrimination claim with the management. Ms. Mosby also felt that her integrity was being questioned because she was asked to report Ms. Moore's progress daily.

In addition to her training of Ms. Moore, Ms. Mosby points to alleged comments made in 1999 by Ms. Barker, where Ms. Barker asked Ms. Mosby if she was going to go to the EEOC concerning possible promotion of another SFPP Technical Specialist. Ms. Mosby also points to an alleged comment made by

Ms. Gannon comparing Ms. Moore to another former trainee, Mai Wade, who was also an African-American. Finally, Ms. Mosby claims she received less prestigious projects than her co-workers.

Ms. Mosby is a member of a protected class. She has also demonstrated that she was subjected to unwanted harassment through increased scrutiny during her training of Ms. Moore and the alleged comments made to her during this time. Additionally, Ms. Mosby demonstrated that the discrimination was based on race by providing examples of comments directly related to her race. Because Ms. Mosby's claims are based on acts allegedly committed by a supervisor, she does not have to establish the fifth prong. However, Ms. Mosby has not met the fourth prong of the prima facie case of hostile work environment. Ms. Mosby has failed to produce sufficient evidence to show that the alleged harassment rose to the level of severity or pervasiveness sufficient to create an objectively hostile or abusive environment that interfered with her work performance.

Ms. Mosby has stated that she had to stay home one day because of all of the stress concerning her training of Ms. Moore. She alleges generally that her harassment spans the time she trained Ms. Moore, from January 2002 through August 2003.[6] During this time, she was allegedly "ignored and treated differently by [her] co-employees," and that treatment has continued. (Mosby Aff. ¶ 35.) Despite these allegations, Ms. Mosby admitted that her work environment has been pleasant, except for whispering between Ms. Alsup, Ms. Gannon, and Ms. Fields that has made her feel left out. She also stated that she gets along with her co-workers. Whether a series of actions constitute actionable harassment depends on the frequency of the actions, their severity, whether they were physically threatening or humiliating, and whether they interfere unreasonably with the plaintiff's work. Harris, 510 U.S. at 23. Ms. Mosby simply points to three comments made between 1999 and 2002 as support for her allegations of harassment. These three comments do not establish actionable harassment according to the principles set forth in Harris. The comments were not frequent or severe, were not physically threatening, and despite causing her to miss one day of work, did not unreasonably interfere with Ms. Mosby's work performance.

_____

[6]Ms. Mosby also mentions racial mistreatment she experienced early in her career. This treatment is not relevant to the present allegations.

In conclusion, Ms. Mosby has failed to establish the elements necessary to show a prima facie case of harassment based on hostile work environment under Title VII or The THRA. Therefore, State Farm's motion for summary judgment concerning Ms. Mosby's Title VII and The THRA hostile work environment claim is GRANTED.

### 3. Retaliation claims under Title VII[7]

Ms. Mosby claims that she has direct evidence of retaliation and therefore does not need to establish a prima facie case. The Sixth Circuit has described direct evidence as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Johnson v. Kroger Co., 319 F.3d 858, 865 (6th Cir. 2003) (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)). Moreover, direct evidence does not require a fact-finder to draw inferences to conclude that the challenged employment action was motivated because of retaliation. Id.

The direct evidence proffered by Ms. Mosby is Ms. Glaze's comment made in October 2001 that she wanted Ms. Mosby to know that her offer to train Ms. Moore would be taken into consideration in her evaluation. In Ms. Mosby's letter to H.R. in January 2002, she noted "the subject came up about me offering to help Cynthia and that [the offer] would be taken into consideration when the final review was completed. I said ok." (Mosby Aff. Ex. A, Letter from Ms. Mosby to H.R. at 1 (Jan. 25, 2002).) In Ms. Mosby's deposition, she admitted that Ms. Glaze did not say she would be penalized, but Ms. Mosby interpreted Ms. Glaze's comment to mean that she would consider the offer negatively.

Ms. Mosby's direct evidence requires an inference that her evaluation was less favorable than it otherwise would have been in retaliation for her actions. Ms. Glaze admits that she told Ms. Mosby that she would take into consideration the help she gave Ms. Moore. (Glaze Dep. at 44.) Yet there is no indication that the consideration was negative or based on Ms. Mosby's race. In addition, Ms. Glaze made the statement in October 2001, and the evaluation in question was completed in November 2002, more than a year later. Thus, the direct evidence offered by Ms. Mosby does not establish a case of retaliation, and the

---

[7]Although Ms. Mosby's THRA claims of retaliation are time-barred, she may still raise a retaliation charge under Title VII.

Court must consider whether Ms. Mosby has made a prima facie case of retaliation through the introduction of circumstantial evidence.

To prove a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) the exercise of her civil rights was known by the defendant; (3) the defendant made an adverse employment action against plaintiff; and (4) a causal link existed between the protected action and the adverse employment action. Hollins, 188 F.3d at 661-62.

As with her racial discrimination claims, Ms. Mosby cannot show that she has suffered an adverse employment action. Ms. Mosby's retaliation claim is based on her 2002 evaluation and resulting pay increase. A relatively less favorable evaluation, as stated above, is not an adverse employment action. While Ms. Mosby attempts to characterize the adverse action as lost pay, the action is in reality a lower merit increase and bonus, both of which are within the discretion of the employer. Ms. Mosby alleges that the fact that in a later year she received a more favorable bonus and larger raise indicate that she was discriminated against in prior years. However, this evidence does not establish that the prior evaluation and pay increase were an adverse action.

Ms. Mosby also failed to establish the fourth prong of the prima facie case, a causal link between her review and her letter to H.R. "In order to satisfy the causal-link element of the prima facie case requirement, a plaintiff must produce evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action. The mere fact that a plaintiff suffers an adverse employment action subsequent to participating in protected activity is insufficient to establish the fourth element of the prima facie case requirement." Halloran v. Minn. Old N.W. Agents, 58 F. Supp. 2d 831, 841 (W.D. Tenn. 1999). The only evidence Ms. Mosby provides is that the November 2002 evaluation came after her January 2002 letter to H.R.. However, such evidence is insufficient to establish causality.

Finally, even assuming Ms. Mosby established her prima facie case, she has not presented evidence rebutting State Farm's proffered non-discriminatory reasons for its actions. State Farm presented evidence that Ms. Glaze evaluated employees and determined raises at her discretion. Ms. Glaze noted that Ms. Mosby received a relatively less favorable evaluation because the other employees demonstrated a higher level of understanding of their job responsibilities. (Glaze Dep. at 26.) Additionally, Ms. Glaze noted areas

of improvement on Ms. Mosby's evaluation form.

Ms. Mosby's rebuttal is based on her opinion that she deserved a higher raise and better evaluation that she received in November 2002. Specifically, Ms. Mosby's rebuttal is based on her belief that her work was as good in all respects as that of the white Technical Specialists and she received the same pay as the others up until her November 2002 evaluation, which took place after she complained to H.R. in January 2002. Ms. Mosby argues that this evidence coupled with the fact that she received a better evaluation at a later date in 2004 supports her contention that the November 2002 evaluation and pay raise were lower than warranted in response to her letter to H.R. in January 2002 complaining of racial discrimination. Again, Ms. Mosby's opinions on this issue are not enough to create a genuine issue of material fact. Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992) ("[T]he statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

Therefore, the Court GRANTS State Farm's Motion for Summary Judgment as to Ms. Mosby's retaliation claims under Title VII.


## IV. CONCLUSION

For the foregoing reasons, State Farm's Motion for Summary Judgment is GRANTED on all counts and the case is DISMISSED.

Thomas A. Wiseman, Jr.
Senior United States District Judge